[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON APPLICATION FOR PREJUDGMENT REMEDY
The plaintiff Sharon Arthur brings this action for money damages against her former husband Todd Huschke and former mother-in-law Wanda Vine. The plaintiff alleges that shortly after she announced her intention to separate from Huschke he CT Page 12372 grabbed their two-year-old daughter Siobhan from the babysitter's car and disappeared with Siobhan for the next fifteen years. For that period of time, until an eventual reunion with Siobhan in 1997, the plaintiff's emotional life was wracked by sorrow. For all that time she did not even know whether her daughter was dead or alive, sick or well.
Eventually as a teenager, Siobhan surfaced. On July 16, 1997, Siobhan showed up at the plaintiffs home and they were briefly reunited. Given the circumstances that then existed, the plaintiff agreed to relinquish custody of Siobhan to Huschke who agreed to allow visitation to the plaintiff. Meanwhile for the first time the plaintiff was able to learn some of the details of the methods by which the defendant had hidden with Siobhan for all those years.
Huschke adopted the name of a former classmate who had died, and created new identity papers for himself and his daughter. He used this new last name — Graham and changed the spelling of his daughter's first name to Shavonne. The two resided in the South Carolina vacation home of the defendant Wanda Vine, Huschke's mother. Vine knew that there was a court order granting the plaintiff custody of Siobhan, and she knew that Huschke was keeping Siobhan with him in violation of that order. Vine allowed them to live in her second home and in fact lived with them for periods of time when she vacationed in South Carolina. Vine told other family members that if they revealed Siobhan's whereabouts, Vine might be in some kind of trouble;
The plaintiff has presented this evidence, which the court finds credible, in support of her application for a prejudgment remedy against Vine.[1] The plaintiff alleges that the conduct of Huschke constitutes the tort of interference with custody rights and intentional or negligent infliction of emotional distress. The plaintiff alleges that Vine's conduct constitutes the same torts, since she "aided and abetted" the conduct of Huschke.
Vine denies that her conduct was tortious. She claims that the evidence only supports a finding that she knew where Siobhan was and declined to notify anyone about it, and that such conduct is not a tort. Moreover, since Huschke's original interference with custody occurred in 1982, and Vine has always maintained a primary residence in Connecticut and been amenable to service of process here, she claims that the statute of limitations bars any action against her. CT Page 12373
The Connecticut Supreme Court had occasion to consider whether the tort of custodial interference was a viable cause of action in the case of Marshak v. Marshak, 226 Conn. 652 (1993). Such a tort is defined by the Restatement (Second) of Torts (1977), § 700, as follows:
 One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has left him, is subject to liability to the parent.
Moreover by applying the elements of a civil action for conspiracy to the tortious or unlawful conduct of custodial interference, a third party acting together with a noncustodial parent could be held liable for such a tort.
Because the underlying facts of the abduction of the Marshak children did not support liability against the third party in that case, the Court stopped short of actually recognizing the tort of custodial interference. The Court stated however:
 We agree with the trial court that the recognition of the tort of child abduction or custodial interference, as applied to either a parent or a third party, might well play an important role in encouraging the speedy return of abducted children to the custodial parent and in compensating that parent for the harm suffered from the child's absence. We also agree that such a tort may have a place in our jurisprudence.
Id., 665. The Court held that liability could only attach to a third party if the conduct of the third party occurred at a time when the abducting or interfering parent had no legal entitlement to custody. The third party who aided the abducting father inMarshak did so at a time when the father still had de facto joint custody under Conn. Gen. Stat. § 45a-606. "The absence of a specific finding by the trial court that the defendant [third party] had conspired with or aided the children's father at a time after the father had been stripped of any legal entitlement to custody of the children is fatal to the plaintiffs claim," the Court held. Id., 667-68[emphasis supplied].
There is no evidence that Vine aided Huschke in initially abducting or sequestering Siobhan, and even if she had done so, under Marshak she would not be civilly liable because no order CT Page 12374 was in place granting exclusive custody to the plaintiff. But by November 17, 1982, such an order had been entered by the Superior Court in the Judicial District of New Haven. Believing Vine and Huschke to be in Florida with the child, the plaintiff filed an action in that state under the Uniform Child Custody Jurisdiction Act. On March 11, 1983, the Circuit Court in Broward County, Florida, (Gene Fischer, Circuit Judge) recognized the Connecticut Superior Court order and issued a "Child-Pick-Up Order" authorizing the Broward County Sheriff's Department to take Siobhan from Huschke or Vine and return the child to the plaintiff in whose custody Siobhan was to remain until the further order of the court. Vine's Florida counsel appeared on her behalf in the Florida Circuit Court proceeding to challenge jurisdiction and attack the validity of the Florida court order. Though the Florida proceeding was eventually dismissed after the child could not be located in Florida, it is clear that from at least May of 1983 forward, Vine knew that the legal custody of Siobhan resided not with Huschke but rather with the plaintiff.
By 1989, Huschke had settled down with Siobban under an alias. Huschke lived with Siobhan (Shavonne) in the house owned by Vine in Folly Beach, South Carolina. By then age 8, Siobhan attended school. Other members of the Huschke/Vine family spent vacations at the Folly Beach house, as did Vine, and were aware of Siobhan's presence there. But none said a word to the authorities or to the grieving mother.
Were Vine's only conduct silence in the face of this outrageous situation, it is nonetheless doubtful that she would have committed a tort. But Vine's consent to Huschke's use of her Folly Beach home as his hideout, along with Vine's actual knowledge at the time that the legal custody of Siobhan has been awarded to the plaintiff, is sufficient for the court to conclude that Vine aided and abetted Huschke in the tort of custodial interference and infliction of emotional distress. Thus Vine herself is liable to the plaintiff.
Conn. Gen. Stat. § 52-278d requires that the court also take into account any defenses to the action. In this case the defendant claims that the three year statute of limitations in Conn. Gen. Stat. § 52-577 bars this action since the child was taken in 1982 and the action was not brought until 1999. However, Conn. Gen. Stat. § 52-595 provides:
 If any person, liable to an action by another, fraudulently CT Page 12375 conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence.
The plaintiff learned of Vine's complicity in hiding Siobhan after the reunion in 1997. Since the plaintiff's entire substantive claim against Vine is that Vine conspired up to that time to conceal the child, it is no leap at all for the court to find that Vine contemporaneously fraudulently concealed the existence of the cause of action from the plaintiff.
The only remaining question — that of the probable amount of a judgment against Vine — is amply answered by the compelling testimony of the plaintiff. The court finds probable cause that a judgment in the amount of $175,000 will be rendered in favor of the plaintiff against the defendant Wanda Vine. The court grants the application, and the defendant not having requested that the plaintiff post a bond, an order for a prejudgment remedy in that amount shall issue forthwith.
Patty Jenkins Pittman Judge of the Superior Court